UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RANDALL LOWELL,<br><br>Plaintiff(s),<br>v.<br><br>ANGI INC.,<br><br>Defendant(s). | CASE NO. C25-1702-KKE<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION WITHOUT PREJUDICE |

Plaintiff Randall Lowell ("Lowell") filed this putative class action against Angi Inc. ("Angi"), the company that operates angi.com, alleging that Angi violated state and federal law by initiating or assisting in the transmission of unwanted commercial text messages and phone calls. Angi moves to compel arbitration, arguing that Lowell consented to a binding arbitration agreement when he submitted service requests through Angi's mobile application. Lowell denies ever using Angi's platform or submitting the requests.

Because the parties genuinely dispute whether Lowell submitted the requests and thereby assented to the arbitration agreement, the Court will deny Angi's motion and direct the parties to proceed with discovery into whether they ever formed a binding agreement. Upon completing this limited discovery, Angi may renew its motion to compel or, if necessary, the parties may proceed to a jury trial on the issue of arbitrability.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION WITHOUT PREJUDICE - 1

## I.    BACKGROUND

Angi operates a platform under the brands Angi, HomeAdvisor, and Handy, for connecting home service professionals (referred to by Angi as "Pros") with consumers. Dkt. No. 1-1 ¶¶ 4.7–4.8; Dkt. No. 22-1 ¶ 4. Through its website, Angi enables consumers to research, match with, hire, and review Pros across a variety of service categories. Dkt. No. 22-1 ¶ 4. Lowell alleges that, between 2019 and 2025, he received dozens of unwanted commercial solicitations via text and phone from Angi or its Pros despite having placed his phone number on the national do-not-call registry. Dkt. No. 1-1 ¶¶ 4.61–4.62, 4.126.

In August 2025, Lowell sued Angi in state court seeking to represent a class of individuals who were sent similar unwanted solicitations, which he claims violates the federal Telephone Consumer Protection Act ("TCPA") and two Washington statutes: the Commercial Electronic Mail Act ("CEMA") and Consumer Protection Act ("CPA"). *Id.* ¶¶ 5.1–8.3. Angi removed the case to this Court (Dkt. No. 1) and then moved to compel arbitration (Dkt. No. 22). Angi also separately filed motions to dismiss the TCPA claims and to strike the Complaint's class action allegations. Dkt. Nos. 17, 18.

Along with its motion to compel arbitration, Angi filed a declaration by Joseph Puccio, Angi's Senior Vice President of Product Management. Dkt. No. 22-1 ¶ 2. Puccio states that, according to Angi's records, Lowell visited angi.com several times and made service requests, thereby accepting Angi's terms, which include an arbitration clause.[1] *Id.* ¶¶ 10, 18, 20–25. Attached to his declaration are printouts of the service requests, which list Lowell's name, email

---

[1] According to Puccio, Angi's customer agreement is titled the Angi Project Advisor, Book Now Services, and Project Submission Customer Agreement. Dkt. No. 22-1 ¶ 8, Dkt. No. 22-2 at 46. The Court refers to this agreement as "Angi's terms" or simply the "terms."

ORDER DENYING DEFENDANT'S MOTION TO COMPELL ARBITRATION WITHOUT PREJUDICE - 2

address, physical address, and phone number, as well as descriptions of the requested tasks, such as repairing asphalt, painting, repairing a gas furnace, and replacing siding.  Dkt. No. 22-3.

Puccio states that Angi's system would only generate a service request after a consumer affirmatively consents to Angi's terms.  Dkt. No. 22-1 ¶ 25.  To create a service request, a consumer must visit Angi's website, a partner website, or the Angi mobile app; enter their name, zip code, phone number, and information about the requested service; and click a "View Matching Pros" button.  *Id.* ¶ 6.  Immediately below that button is a disclosure that states:

> By clicking View Matching Pros, I agree to <u>Angi's Terms</u> and <u>Privacy Policy</u>, and that Angi and its <u>service professionals</u>, or parties acting on their behalf, may use automated technology and prerecorded messages to deliver marketing calls or texts regarding my project and future projects to the number I provided.  Consent is not a condition of service.

*Id.* ¶ 7 (underline in original denoting hyperlink).

If the consumer clicks on the hyperlinked "Angi's Terms" text, they are taken to a webpage containing the full terms.  *Id.* ¶ 23.  Since 2021, those terms have included an arbitration clause, which provides in relevant part:

> To expedite resolution and reduce the cost of any dispute, controversy or claim, past, present, or future, between you and Angi, including without limitation any dispute or claim related to or arising out of this Agreement ("Dispute"), you and Angi may attempt to negotiate any Dispute informally (the "Informal Negotiations") before initiating any arbitration or court proceeding.

> If a Dispute is not resolved through Informal Negotiations, you and Angi agree to resolve any and all Disputes (except those Disputes expressly excluded below) through final and binding arbitration ("Arbitration Agreement").  This Arbitration Agreement shall be governed by the Federal Arbitration Act and evidences a transaction involving commerce.  The arbitration will be commenced and conducted before a single arbitrator under the Commercial Arbitration Rules (the "AAA Rules") of the American Arbitration Association ("AAA") and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules"), both of which are available at the AAA website ….  Additionally, the arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION WITHOUT PREJUDICE - 3

Dkt. No. 22-2 at 71.

Lowell submitted his own declaration in response to Angi's motion, disputing that he has ever used Angi's services or consented to its terms. Dkt. No. 28. According to Lowell, he has never used Angi's List, downloaded Angi's mobile app, or used Angi's website to submit a service request. *Id.* ¶¶ 2–4. In fact, he does not recall ever visiting Angi's website. *Id.* ¶ 4. Lowell specifically contends he did not submit any of the dozen service requests attached to Puccio's declaration. *Id.* ¶ 6. And he attaches records to his declaration that he claims show he was engaged in other activities when many of the services were requested. *Id*. ¶¶ 9, 11–14. Lowell claims he had never seen Angi's terms until he reviewed Puccio's declaration during this litigation. *Id.* ¶ 17.

Angi's motion to compel arbitration is fully briefed, neither party has requested oral argument, and the motion is now ripe for consideration.

## II.    ANALYSIS

### A.    Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. Accordingly, courts place arbitration agreements on "equal footing with other contracts," and recognize "a federal policy in favor of arbitration[.]" *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

If the existence of an arbitration agreement is "in issue," the FAA provides that "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. In applying this procedure, Courts rely on the summary judgment standard of Federal Rule of Civil Procedure 56. *Hansen v. LMB*

*Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Thus, a court will only "decide as a matter of law that the parties did or did not enter into" an arbitration agreement if "there is no genuine issue of fact concerning the formation of the agreement[.]" *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). The party denying the existence of an agreement receives "the benefit of all reasonable doubts and inferences that may arise." *Id.* (quoting *Par–Knit Mills*, 636 F.2d at 54); *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (holding that "presumption in favor of arbitrability" applies only where the *scope* of an agreement to arbitrate is ambiguous: "If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply.").

The FAA's procedure for resolving disputes over the existence of an arbitration agreement "mirrors the three phases of federal civil lawsuits: a motion to compel arbitration akin to a motion to dismiss; followed by optional discovery before summary judgment, if the motion is denied; followed by a mini-trial, if necessary." *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 833 (9th Cir. 2022) (citing *Hansen*, 1 F.4th at 670). If neither party carries its initial burden to show the existence or absence of a binding agreement, courts have interpreted *Knapke* as allowing limited discovery into arbitrability, followed by a renewed a motion to compel and, if necessary, a trial. *See, e.g., Tu v. Experian Info. Sols., Inc.*, No. 24-CV-1221-WQH-MSB, 2025 WL 1134612, at *9 (S.D. Cal. Apr. 16, 2025) (collecting cases).

**B.    Genuine issues of fact warrant discovery and, potentially, a trial on arbitrability**

Here, the Court cannot decide as a matter of law whether Lowell assented to Angi's terms because the parties genuinely dispute whether he, or someone else, made the service requests attached to Puccio's declaration. Lowell denies having ever visited Angi's website, used its services, or submitted any of the requests. And he presents various receipts, emails, and other

records indicating where he was located or what he was doing at the times the requests were made. Dkt. No. 28 ¶¶ 8–9, 11–14. Lowell claims he does not know how Angi got his name or phone number, but his brief speculates it is possible "he is a victim of one or more companies that compile lead lists by scraping websites for contact information." Dkt. No. 26 at 6 n.1.

Angi argues it is "implausible" that anyone other than Lowell could have obtained his personal information and submitted service requests to Angi without his knowledge. Dkt. No. 38 at 2. But unless Angi can show there is no genuinely disputed issue concerning contract formation, that question is for a jury to decide—or, at least, the Court upon a renewed motion after discovery. And on this record, the Court cannot agree with Angi that Lowell has presented only "a self-serving declaration" without "specific facts or corroborating evidence" to support his position. *Id.* at 3.

To the contrary, Lowell's sworn declaration unequivocally disclaims having submitted each of the twelve service requests, contends he "was not seeking anyone to perform the services described in the requests" on the relevant dates, and presents specific facts and evidence to support his contention. Dkt. No. 28 ¶¶ 6, 9–16. For instance, Lowell disputes that he submitted service requests for repairs to a gas furnace or for landscaping, explaining he does not own a gas furnace and does not live at, or know anyone who lives at, the address associated with the landscaping request. *Id.* ¶¶ 12, 16. He also submits a screenshot of his email inbox from one of the relevant time periods and claims he was "engaged in a series of nonstop emails and back-to-back phone calls with attorneys and experts about a friend's wrongful death suit" when one of the service requests was made. *Id.* ¶ 9. And he claims he was driving in traffic or at a coffee shop at the time of two other requests (*id.* ¶¶ 11, 13); that he sent a business email at the exact time another request was submitted (*id.* ¶ 12); and that he was told by Pros they had received service requests from an Apple device even though he does not own an Apple device (*id.* ¶ 8).

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION WITHOUT PREJUDICE - 6

Drawing all inferences in Lowell's favor, as the Court must at this stage, a reasonable factfinder could determine on this record that Lowell did not submit the service requests and thus did not consent to Angi's terms. Because Angi has not yet carried its burden to show mutual assent to an arbitration agreement, the Court will direct the parties to proceed to discovery on the issue of arbitrability followed by an optional renewed motion to compel and, if necessary, a mini-trial. *See Knapke*, 38 F.4th at 833. Consistent with both parties' demands, any trial on arbitrability shall be by jury. Dkt. No. 22 at 18, Dkt. No. 26 at 11.

Accordingly, the parties should meet and confer and submit a joint status report by May 27, 2026, proposing a schedule for completing discovery into arbitrability and a deadline for Angi to file any renewed motion to compel arbitration. In the event Angi elects to proceed directly to trial after discovery, or if its renewed motion is denied, the Court will at that time direct the parties to propose a trial date on the issue of arbitrability in coordination with the Courtroom Deputy.

Finally, if Angi succeeds in establishing the existence of a binding arbitration agreement, the arbitrator will be tasked with resolving the issues raised in Angi's motion to dismiss and motion to vacate the Complaint's class action allegations. *See* Dkt. Nos. 17, 18. Accordingly, the Court will stay both motions and direct the Clerk to terminate them without prejudice to being reinstated in the event this case does not proceed to arbitration.

### III.  CONCLUSION

Accordingly, the Court ORDERS that:

1) Angi's motion to compel arbitration (Dkt. No. 22) is DENIED without prejudice. Angi shall be permitted to file a renewed motion following completion of limited discovery into arbitrability.

2) Angi's motion to dismiss (Dkt. No. 17) and motion to strike class action allegations (Dkt. No. 18) are STAYED and the Clerk is directed to terminate both motions. Angi may request that its motions be reinstated upon resolution of the arbitrability issue.

Dated this 13th day of May, 2026.

Kymberly K. Evanson
United States District Judge

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION WITHOUT PREJUDICE - 8